IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

|  |  |
|---|---|
| **KEVIN E. SCRIBER,** *Personal Representative of the Small Estate of Katrina Scriber*, <br><br> Plaintiff, <br><br> v. <br><br> **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** <br><br> Defendant. | Civ. Case No. GLS 22-2693 |

# MEMORANDUM OPINION

Pending before the Court[1] is Defendant Washington Metropolitan Area Transit Authority's ("Defendant" or "WMATA") "Amended Motion for Summary Judgment," and memorandum in support thereto. ("Motion") (ECF Nos. 35, 35-1). Katrina Scriber ("Plaintiff") filed "Plaintiff's Response in Opposition to Defendant Washington Metropolitan Area Transit Authority's Motion for Summary Judgment." ("Opposition") (ECF No. 47). Thereafter, Defendant filed a Reply. (ECF No. 49). Accordingly, briefing on the matter is complete. The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

For the reasons set for below, the Motion is **GRANTED**.

**I. BACKGROUND**

**A. Procedural Background**

Plaintiff initiated this negligence lawsuit in the Circuit Court for Prince George's County,

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of this Court to conduct all further proceedings in this case, to include through trial, entry of final judgment, and resolution of post-judgment proceedings. (ECF Nos. 8, 12).

Maryland after she was allegedly injured while a passenger on a bus operated by WMATA. (ECF No. 1). WMATA then removed the case to this Court. (*Id.*). In the Complaint, Plaintiff alleges that WMATA, via its employee bus driver, breached its duty of care by negligently operating a bus that she was riding on, causing her injury. (ECF No. 4, "Complaint"). In particular, Plaintiff alleges that on September 24, 2019, she boarded a Metrobus, and before she was safely seated, the bus driver abruptly moved the bus away from the bus stop and back into the road. (Complaint, ¶ 2). She further alleges that the driver's actions caused her to fall backwards, hit the floor, and roll, resulting in her physical and psychological injuries. (*Id.*, ¶¶ 2–3).

Defendant filed an Answer, a Scheduling Order was entered, and after the close of discovery Defendant filed the Motion.[2]

### B. Factual Background[3]

1. <u>Plaintiff's Testimony About the Incident</u>

On September 24, 2019, Plaintiff boarded a bus operated by Defendant at the Kenilworth Avenue bus stop. (Deposition of Katrina Scriber, "Pl. Dep.," 13:20-22, JA0009). Plaintiff boarded the bus with a small suitcase and wearing a backpack on her back. (*Id.*). After boarding, Plaintiff took her suitcase to the seat designated for seniors and placed her backpack on the seat. (*Id.*). Then Plaintiff went back and paid her fare with her WMATA trip card before she sat down in the last seat on the driver's side of the bus. (Pl. Dep., JA0009–10). There was a gentleman sitting next to Plaintiff. (Pl. Dep., JA0010). After Plaintiff returned to her seat, she placed her backpack on her

---

[2] On June 9, 2025, the parties notified the Court that Plaintiff Katrina Scriber had died and that no party had been substituted in her place. (ECF No. 62). Following a telephonic case management conference held on July 22, 2025, Plaintiff's counsel filed a Motion to Substitute Party pursuant to Fed. R. Civ. P. 25(a)(1). (ECF Nos. 65, 67). Defendant opposed the motion. (ECF No. 68). Thereafter, the Court granted the Motion, substituting Kevin E. Scriber, Personal Representative of the Small Estate of Katrina Scriber, as Plaintiff in this case. (ECF No. 71).

[3] The parties submitted a Joint Appendix. (ECF No. 50, "JA"). Defendant's submissions can be found in this range: JA Nos. 0001–12. Plaintiff's submissions can be found in this range: JA Nos. 0013–14. The Court will refer to the documents contained therein as, e.g., JA0001. In addition, the Plaintiff's fall was captured by video cameras on Defendant's Metro Bus. Thus, the Joint Appendix also contains video exhibits: JA0005 and JA0013.

lap. (*Id.*).

Once Plaintiff was fully seated, the bus began to move. (Pl. Dep., JA0010). Plaintiff reports that the bus driver started making a left turn, "going rather fast" which caused her to "fl[y] off the seat and . . . crash[] into the console at the bottom of the seat across from [her] . . . in front of the bus, and [that she] rolled around and then [she stopped]." (*Id.*). Plaintiff laid there for a few minutes in a daze before the gentleman who sat next to her asked if she was okay and helped her back to her seat. (*Id.*). Plaintiff reports that no other passenger fell as a result of the turn. (*Id.*). No other passenger said anything as the bus was turning; only the man who asked if Plaintiff was okay. (*Id.*). Plaintiff does not recall whether the bus driver spoke to her after her fall. (*Id.*).

Thereafter, Plaintiff took an ambulance to a local hospital for treatment. (Pl. Dep., JA0010–11).

2. <u>Videos of the Incident</u>

Video cameras located on the Defendant's Metro Bus captured the incident, which occurred between approximately 12:01 p.m. and 12:03 p.m. on September 24, 2019. (Exhibit 2, JA0005; Exhibit 4, JA0013). In support of the Motion, Defendant submitted a video that depicts the events from a view at the front of the bus going to the back of the bus, as if a camera were mounted on the vehicle's front windshield. (Exhibit 2, Camera 3, JA0005). In opposing the Motion, Plaintiff submitted video that depicts the interior and exterior of the bus from eight different angles. (Exhibit 4, Cameras 1–8, JA0013).[4] Both parties' video exhibits depict Plaintiff boarding the bus, at

---

[4] Camera 1 faces the street and is placed in the windshield. (Exhibit 4, Camera 1, JA0013). Camera 2 is located near the driver's seat and faces the front door. (*Id.*, on Camera 2). Camera 3 is located in the front left corner of the bus and shows the entryway, driver, aisle, and seats near the front of the bus. (*Id.*, on Camera 3). Camera 4 faces the rear door from the middle of the bus. (Exhibit 4, Camera 4, JA0013). Camera 5 shows the back section of the bus. (*Id.*, Camera 5). Camera 6 is located on the exterior right side of the bus and captures the street view looking backwards while Camera 7 captures the exterior left side. (*Id.*, Camera 6-7). Finally, Camera 8 is located in the front right corner of the bus and features the bus driver, the bus aisle, and seats near the front of the bus. (*Id.*, on Camera 8).

3

approximately 12:02 p.m., with her backpack on her back and wheeling a small suitcase. (Exhibit 4, 12:01:55–12:02:02 on Cameras 3, 8, JA0013). As set forth more fully herein in Section III.C, the video exhibits depict what transpired on the Metro Bus.

## II. THE LAW

### A. Summary Judgment

#### 1. The Law in General

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).

The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Wit Man Tom v. Hospitality Ventures, LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). The burden can be satisfied through the submission of, e.g., deposition transcripts, answers to interrogatories, admissions, declarations, stipulations, and affidavits. *Celotex Corp.*, 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984); *see also* Fed. R. Civ. P. 56(c)(1)(A). When considering a motion for summary judgment, courts are only allowed to consider evidence that would be admissible at trial. *See Harvey v. Velasquez Contractor, Inc.*, Civ. No. GLS 19-1573, 2020 WL 5628976 at *2 (D. Md. Sept. 21, 2020) (explaining that "to be entitled to consideration at the summary judgment stage, the evidence supporting the facts set forth by the parties must be such as would be **admissible** in evidence" at trial (emphasis in original) (citing *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 349 (D. Md. 2011))); *see also* Fed. R. Civ. P. 56(c)(2).

The Court must construe the facts and documentary materials submitted by the parties in the light most favorable to the party opposing the motion. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). To defeat a motion for summary judgment, the nonmoving party cannot simply rest on allegations averred in its opposition or other brief. Rather, the nonmoving party must demonstrate that specific material *facts* exist that give rise to a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323 (emphasis added); *see also* Fed. R. Civ. P. 56(c)(1).

Summary judgment is inappropriate if sufficient evidence exists from which a reasonable jury may decide in favor of the non-movant. *Anderson*, 477 U.S. at 250. "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility." *U.S. Equal Emp. Opportunity Comm'n v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 437 (D. Md. 2020) (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006), and then citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002)). However, the "mere existence of a scintilla of evidence in support of the [non-movant]" is insufficient to create an issue of material fact. *Anderson*, 477 U.S. at 248.

2. Video Evidence

When relevant evidence is captured on video, the facts of that video should be viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). When "videos clearly depict the events at issue, they will prevail over contrary evidence submitted by either side." *Glascoe v. Sowers*, Civ. No. ELH 11-2228, 2013 WL 5330503, at *5 (D. Md. Sept. 20, 2013), *aff'd*, 570 F. App'x 344 (4th Cir. 2014). With that being said, "this principle does not license a court to reject a plaintiff's account on summary judgment if the documentary evidence, such as a video, merely offers *some* support" for the defendant's version of events. *Id.* at *4 (quoting *Witt*

5

*v. West Virginia State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011)) (internal quotation marks omitted) (emphasis in original). Thus, when video evidence does not "clearly depict" the incident at issue, courts must "adopt plaintiff's version of events for purposes of the Motion." *Id.* at *5.

## III.  DISCUSSION

### A.  Negligence

Under Maryland law, to make out a *prima facie* negligence claim a plaintiff must prove that: (1) the defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual loss or injury; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *Todd v. Mass Transit Admin.*, 816 A.2d 930, 933 (Md. 2003) (internal citations omitted) (internal quotation marks omitted). In Maryland, "a common carrier owes its passengers the highest degree of care to provide safe means and methods of transportation for them." *Wash. Metro. Area Transit Auth. v. Djan*, 979 A.2d 194, 196 (Md. Ct. Spec. App. 2009) (citing *Todd*, 816 A.2d at 934). WMATA is such a common carrier who owes a duty of reasonable care to its passengers. *Id.* at 96–97.

That being said, "a common carrier is not an insurer of the safety of its passengers." *Mass Transit Admin. v. Miller*, 315 A.2d 772, 774 (Md. 1974). Once a passenger is onboard, a driver is free to "resume his ordinary duties as to the vehicle without further concern with the movements of passengers within the car." *Id.* at 775 (internal quotation marks omitted) (quoting *Przyborowski v. Balt. Transit Co.*, 59 A.2d 687, 689 (Md. 1948)). Indeed, the driver is not under an obligation to wait for a passenger to be seated before starting the vehicle, "unless the passenger has some obvious infirmity." *Djan*, 979 A.2d at 196 (collecting cases). Notably, it is "the duty of a passenger, once on board a public carrier, to use reasonable care to protect himself against the normal motions

of the vehicles incident to public transportation." *Retkowsky v. Balt. Transit Co.*, 160 A.2d 791, 793 (Md. 1960). Thus, in order to find WMATA negligent for the actions of its bus driver, there must be some evidence from which a jury could find that the bus driver was negligent. *WMATA v. Seymour*, 874 A.2d 973, 977–78 (Md. 2005).

In the instant case, the parties do not dispute that WMATA is a common carrier who had the duty of reasonable care to Plaintiff. Thus, the Court analyzes whether Plaintiff can establish that Defendant breached its duty of care and that the breach proximately caused Plaintiff's injuries.

### B. The Parties' Arguments Related to Breach of Duty

Defendant contends that summary judgment in its favor is appropriate under something called the "jerk-and-jolt" doctrine for two reasons. First, Defendant argues that the video makes clear that Plaintiff was not thrown an unusual distance and thus Plaintiff has failed to produce evidence of a "definite, factual incident" that the movement of the bus was unusual or extraordinary. Second, the bus did not make an abnormal turn. Instead, Plaintiff slid from her seat because she was not properly seated with her backpack on her back. In sum, Plaintiff has failed to produce evidence that creates a genuine dispute of material fact from which a reasonable jury could find Defendant breached its duty of care and thus summary judgment must be entered in its favor. (Motion, pp. 4–6).

Plaintiff counters that summary judgment is improper because the "jerk-and-jolt" doctrine does not preclude recovery where, as here, the Defendant operated the bus in an abnormal and extraordinary way. Specifically, Plaintiff first avers that she was thrown an unusual distance from her seat to the floor where she slid several feet, constituting a "definite, factual incident" that establishes the Defendant's negligence. Second, Plaintiff contends the bus driver operated the bus in an abnormal and extraordinary manner by: failing to keep the bus within the turn only lane;

7

making the left turn at 25 mph; and unnecessarily accelerating before turning left to beat an oncoming vehicle. (Opposition, pp. 3–6).

In its Reply, Defendant maintains that the video evidence fails to create a genuine dispute of material fact that the bus's turn was abnormal and extraordinary. (Reply, pp. 1–4).

**C. Analysis**

Under the "jerk-and-jolt" doctrine, a plaintiff cannot prevail on a claim of negligence against a common carrier simply by describing that the vehicle in which she rode experienced "a sudden jerk or jolt." *Allen v. MV Transp. Inc.*, Civ. No. CCB 20-179, 2020 WL 5407765, at *2 (D. Md. Sept. 8, 2020) (citing *Comm'r of Motor Vehicles v. Balt. & Annapolis R.R. Co.*, 263 A.2d 592, 594 (Md. 1970)). Instead, the burden is on the plaintiff to produce evidence that establishes that "some definite, factual incident" resulted from the common carrier's movement of the vehicle, and that the movement was "so abnormal and extraordinary that it can be legally found to have constituted negligence in operation." *Johnston v. Greyhound Corp.*, 139 F. Supp. 551, 556 (D. Md. 1956). Evidence of a "definite, factual incident," when accompanied by supporting evidence of "some alleged failure of care on the part of the driver," may be sufficient to establish a negligence claim. *Allen*, 2020 WL 5407765, at *2.

Maryland courts have previously found a "definite, factual incident" where: (a) there was an unusual or extraordinary effect on the other passengers, e.g., where the movement of the vehicle threw the other passengers back and forth; (b) the movement caused spontaneous exclamations of excitement from other passengers; (c) there was physical damage done to the vehicle or to the personal property of passengers or plaintiff; or (d) the plaintiff was propelled an unusual distance by the movement. *Retkowsky,* 160 A.2d at 793–94; *see also Djan*, 979 A.2d at 197 (collecting cases) (holding the same); *Allen*, 2020 WL 5407765, at *2 (same).

The Court has reviewed the video evidence recorded by the WMATA bus cameras, which captured the September 24, 2019 incident between approximately 12:01 p.m. to 12:03 p.m. The Court views the facts in the light depicted by the Plaintiff's video footage.[5] *Scott*, 550 U.S. at 381. The video shows Plaintiff boarding the bus with her backpack on her back and wheeling a small suitcase at approximately 12:02 p.m. (Exhibit 4, 12:01:55–12:02:02 on Cameras 3, 8, JA0013). As she boards, Plaintiff pauses by the bus driver to tap the farebox with her metro card before turning down the aisle of the bus and sitting down in the seat closest to the driver. (*Id.*). Plaintiff does not remove her backpack when she takes her seat. (*Id.*, 12:02:07–12:02:11 on Cameras 3, 8, JA0013).

The video shows the bus pull away from the curb and shows that approximately six seconds after Plaintiff took her seat on the bus, the driver takes a left turn. (Exhibit 4, 12:02:12–12:02:27 on Cameras 1–8, JA0013). While the driver is making the turn, the video shows the Plaintiff, seated with her backpack on her back, fall forward and slide out of her seat onto the floor of the bus. (*Id.*, 12:02:22–12:02:26 on Cameras 3, 8, JA0013). As she falls, Plaintiff can be seen on the video reaching out with her left hand before falling to her side in front of her seat and rolling onto her back into the aisle of the bus. (*Id.*). After her fall, Plaintiff can be seen lying on the floor of the bus with her head near the driver's seat—approximately no more than four feet from where she originally was seated. (*Id.*). The video shows that none of the other passengers were affected or disturbed by the bus's left turn. (*Id.*, at 12:02:22–12:02:26 on Cameras 3, 4, 5, JA0013).

Plaintiff has failed to meet her burden by producing evidence that the bus's turn had some unusual or extraordinary effect on the other passengers, that there were any spontaneous exclamations of excitement, or that she was thrown or propelled an unusual distance when she fell.

---

[5] As noted *supra*, the Camera 3 video footage submitted by the Defendant, (Exhibit 2, Camera 3, JA0005) is contained in the videos (Exhibit 4, Cameras 1–8, JA0013) submitted by Plaintiff. Accordingly, the Court will refer to Plaintiff's video evidence when referencing the video footage of the incident.

*Lopez v. Wash. Metro. Area Transit Auth.*, Civ. No. WGC 15-4008, 2016 WL 6962868, at *7 (D. Md. Nov. 29, 2016) (finding no "definite, factual incident" where the plaintiff fails to produce evidence that other passengers were affected or that she was propelled an unusual distance by the movement of the bus). Indeed, the video shows that none of the other passengers were affected or disturbed by the bus's left turn. (Exhibit 4, 12:02:22–12:02:26 on Cameras 3, 4, 5, JA0013). None of the other passengers can be seen thrown about by the bus's movements. (*Id.*). Nor is Plaintiff seen being "thrown or propelled;" instead the video clearly depicts the Plaintiff sliding out of her seat and falling forward to the floor and onto her back. (*Id.*, 12:02:22–12:02:26 on Cameras 3, 8, JA0013). Based on the foregoing, when viewing facts as depicted on the video, no reasonable jury could conclude that Plaintiff was thrown an unusual distance when she fell from her seat to the floor and rolled onto her back near the driver's seat—approximately no more than four feet from her seat. *Compare Kaufman, by Deutch et. al. v. Balt. Transit Co.*, 78 A.2d 464, 466–68 (Md. 1951) (finding that being thrown four feet is not legally sufficient to establish negligence on the part of the defendant), *with Wash. Metro. Area Transit Auth. v. Seymour*, 874 A.2d 973, 979–85 (Md. 2005) (holding that being thrown 8–12 feet and a broken ankle is enough to establish a defendant's negligence).

      Nor could a reasonable jury find that the bus driver acted negligently when operating the bus. The driver cannot be seen on video taking the turn in an unusual manner. (Exhibit 4, 12:02:12–12:02:27 on Camera 8, JA0013). In addition, the video exhibits submitted by Plaintiff contain the speed at which the bus is going at the time of each frame of the video. (Exhibit 4, JA0013). Prior to taking the left turn, the bus reached a speed of approximately 25 mph and during the turn decelerated to a speed of approximately 14 mph. (*Id.*, 12:02:18–12:02:27, JA0013).

      Moreover, the video evidence does not support the Plaintiff's testimonial version of events.

Plaintiff testified that she boarded the bus via the front, took her suitcase to the seat designated for seniors, and placed her backpack on her lap. (Pl. Dep., JA0009–10). According to Plaintiff, she then walked back to the front of the bus and paid her fare with her WMATA trip card before she sat down in the last seat on the driver's side of the bus. (*Id.*) She further testified that she returned to her seat and placed her backpack on her lap. (*Id.*). However, the Court must view the facts in the light depicted by Plaintiff's video footage, *Scott*, 550 U.S. at 381, and Plaintiff's video footage is inconsistent with her deposition testimony. *Compare* Pl. Dep., JA0009–11, *with* Exhibit 4, 12:01:55–12:02:27 on Cameras 1–8, JA0013. To the extent that Plaintiff's deposition testimony contradicts what is depicted on the video, the Court cannot adopt Plaintiff's version of the facts when resolving the Motion. *See Glascoe*, 2013 WL 5330503, at *5 (explaining that a video that clearly depicts the events at issue "will prevail over contrary evidence"); s*ee also Scott*, 550 U.S. at 380 (holding that where one version of events is clearly contradicted by the record "so that no reasonable jury could believe that version, a court should not adopt that version of facts for the purposes of ruling on a motion for summary judgment"). Furthermore, Plaintiff's deposition testimony amounts to nothing more than adjectival descriptions of the incident which are insufficient to establish a negligence claim under the "jerk-and-jolt" doctrine. *See Lopez*, 2016 WL 6962868, at *7 ("Proof of the negligence of a carrier by the characterization of the manner of stopping or starting a car or bus by strong adjectives or expletives will not generally suffice as descriptions of an act of negligence." (quoting *Retkowsky*, 160 A.2d at 795)).

      In sum, when viewing the facts as depicted on the video, there are no genuine disputes of material fact from which a reasonable jury could conclude that there was a "definite, factual incident" that Defendant's conduct constitutes negligent operation. *Butts v. Was. Metro. Area Transit Auth.*, Civ. No. GLS 17-00855, 2018 WL 4616017, at *4 (D. Md. Sept. 26, 2018) (granting

summary judgment for the defendant when the plaintiff failed to establish that a "definite, factual incident" had occurred). Accordingly, summary judgment will be granted in the Defendant's favor.

## IV.  CONCLUSION

For the foregoing reasons, the Motion, (ECF No. 35), is **GRANTED.** Judgment will be entered in favor or Defendants, and the Clerk of the Court is directed to close the case.

A separate Order will follow.

Date: September 19, 2025                         /s/
                                        The Honorable Gina L. Simms
                                        United States Magistrate Judge